## SHATTUCK V. WATSON.

Decided April 12, 1890.

53  147
67  480

1. *Duress—Composition of felony.*

   Papers executed in consideration of the composition of a felony committed by the maker's son are not executed under duress.

2. *Executed illegal contract—Parties in pari delicto.*

   Neither at law nor in equity is any relief afforded to the parties to an executed illegal contract if they are equally in fault.

3. *Illegal purpose—When contract is executed.*

   Where, in consideration of the composition of a forgery committed by his son, a father executes and delivers his notes and mortgage, the contract is executed and equity will not decree their cancellation.

4. *Executory contract—Right to rescind—Failure of illegal purpose.*

   But if the contract were executory, the father cannot, after his illegal purpose to shield his son from prosecution has failed from causes other than a breach of the contract and a prosecution has been commenced by third parties, rescind the contract and recover the securities.

APPEAL from *Johnson* Circuit Court in Chancery.

B. J. BROWN, Special Judge.

*McKennon & Reding* for appellant.

If appellee voluntarily executed the deeds, without a promise that J. E. Watson would not be prosecuted, for the purpose of securing $1,500.00, even though they did not receive any of the money, the deed is binding. Tiedeman on Real Prop., sec. 801. The promise not to prosecute is not proven. On conflict of testimony, when a question is settled by notes or deeds, the consideration is a compromise, and this is sufficient consideration. 1 Suth., Dam., p. 430; 1 Wait, Ac. & Def., sec. 5, p. 95; 1 Pars., Cont., top p. 438 to 444 (6th ed.); 21 Ark., 69; 31 Ark., 222. The proof must be clear and strong of illegal and void consideration, and the burden was on appellee.

*A. S. McKennon & J. N. Sarber* for appellee.

Review the evidence in detail, and contend that the first deed was a forgery; that J. W. Watson never conspired with his son to defraud appellant; that the second deed was executed upon the sole consideration that J. E. Watson was not to be prosecuted, and was void. 36 Am. Rep., 67; 15 Am. Rep., 189; 20 Am. Rep., 258; Addison on Cont., sec., 258; 47 Conn., 221; 27 Mich., 293; 42 Iowa, 689.

HEMINGWAY, J. The appellant had advertised for sale, and was about to sell, lands of the appellee, under the power contained in two mortgages purporting to have been executed by him and his wife to secure the payment of certain notes therein described.

One mortgage bears date March 15, 1886, and recites that it was given to secure one note given for borrowed money and six notes for the interest thereon. The other is dated December 8, 1886, and was given to secure the same notes, except one interest note which had been previously satisfied. The appellee's son paid it.

The appellee brought this suit to cancel both mortgages. and to restrain a sale under them.

The complaint alleges that the prior deed and the notes therein described are forgeries, and that the plaintiff was entirely ignorant of their existence until the day that he excuted the latter deed; that appellant's agent visited his residence on the 8th day of December, 1886, for the purpose of obtaining the deed and notes of that date; that Mangum showed him the forged instruments, and told him they had been forged by his son, J. E. Watson, and that he had thereby obtained the amount of money therein indicated; that he Mangum, only wanted the money secured, and if that was done, the liberty and good name of the son would be saved but that, if it was not done, he would be vigorously prosecuted and sent to the penitentiary and would lose his standing

at the bar and in society; that, in order to prevent the prose-cution and ruin of the son, the deed of trust and notes, all of which Mangum brought ready for signature, were executed, and the deed acknowledged before a justice of the peace, who had accompanied Mangum for that purpose.

The appellee testified that the only consideration for the deed and notes was Mangum's promise not to prosecute his son.

The court found that the material averments of the complaint were true, and that the deed and notes executed by appellee on the 8th day of December were void because they were made upon an illegal and invalid consideration; and it decreed that the appellant should surrender for cancel-lation said deed and notes, and be forever enjoined from sell-ing the land or collecting the notes.

From this judgment the appellant has appealed. He in-sists that the first mortgage and notes were executed by the appellee and are valid, and that the second mortgage and notes were given as a further security for the first, to remove all doubts as to their validity. He asked no affirmative relief in his answer, and we have not considered what his rights would be if he had done so.

The evidence shows that the appellee did not execute the mortgage of March 15th, and fails to satisfy us that he was a party to a conspiracy to obtain money by means of it. As the deed was forged, the appellee is not estopped to set it up, although the son obtained money upon the faith of it and loaned a portion of it to him, unless he participated in the illegal acts. A sale under the power in that deed would cast a cloud on the appellee's title and was properly restrained.

The question whether the appellee, on the case made by him, is entitled to any relief as against the latter mort-gage and notes, is not free from difficulty. His case in effect is, that his son had forged a mortgage, on the faith of

which he had obtained money from the appellant; that appellant desired to obtain security for that money, and appellee desired to suppress the criminal prosecution of the son; that appellant proposed to appellee, that if he would execute the mortgage and notes tendered, appellant would not prosecute his son; that the proposition was accepted, and the papers executed and received accordingly; that the son was prosecuted through other agencies, and the appellee at no time sought to withdraw from the compact or to recover the securities given in pursuance of it, until the sale was advertised —an interval of over two years—and never released the appellant from his promise except as it may be implied by bringing this suit.

Upon this state of case can the appellant invoke equitable relief?

**1. Duress—Composition of felony.** The allegation of duress is not sustained. It seems to be conceded that the son was guilty of a felony, and the appellant threatened only to prosecute him for his crime unless the amount obtained was secured. It was not a threat to prosecute on a simulated charge in order to extort money. *Marvin v. Marvin*, 52 Ark., 425.

**2. Executed illegal contract—Parties *in pari delicto*.** It is a practical principle that guides equity courts in their administration of justice that he who invokes their aid must come with clean hands—that he who hath committed iniquity shall not have equity. It is the policy of the law that crime shall be prosecuted, and it prohibits under severe penalties the suppression of prosecution. An injured party, who agrees with the felon who robs him, that he will not prosecute him, on condition that he return the stolen goods, or who takes a reward on such condition, violates the spirit as well as the letter of the law. The party who gives a reward and the party who receives it, on such condition, stand *in pari delicto*.

Mr. Story, treating the subject as to the rights of parties to such an agreement, states the law as it is generally ap-

proved: "The general rule is, that where an illegal contract has been made, neither courts of law nor of equity will interpose to grant any relief to the parties, but .will leave them where it finds them, if they have been equally cognizant of the illegality." 1 Story, Con., sec. 486; 2 Par., Con., 746; 2 Ad., Con., pp. 715-24; 1 Pom. Eq., sec. 402.

There are some exceptions to the rule, where the contract is *malum prohibitum*, as also where public policy is considered as advanced by allowing the parties or the less culpable one to sue for relief; but it is not material to consider the exceptions now, for cases like this have been considered to fall within the general rule.

In the case of *Atwood v. Fisk*, 101 Mass., 363, Atwood sued to compel the surrender and cancellation of the notes and a mortgage given to secure· them, on the ground that they were given upon the consideration that the defendant would not prosecute him for a felony. The bill was dismissed because the plaintiff was not in a position to claim the equitable relief prayed for.

*Compton v. The Bunker Hill Bank*, 96 Ill., 301, is a case in which a wife sought to cancel a conveyance executed by her to the defendant in consideration of its promise not to prosecute her husband for embezzlement; the court reviewed the authorities and concluded that the bill should be dismissed, saying, "But though the deed may be void for such reason, equity does not relieve the party who executed it upon or for such illegal and immoral consideration and purpose."

We might add many citations to the same effect: *Allison v. Hess*, 28 Iowa, 389; *Inhabitants etc. v. Eaton*, 11 Mass., 377; *Smith v. Rawley*, 66 Barb., 503; *Swartzer v. Gilett*, 1 Chand. (Wis.), 207.

Nor can he derive benefit from the rule, that a party to an executory illegal contract may rescind it while it is executory and unperformed, and recover money paid under it.

3. When illegal contract is executed.

The contract was to give notes and a mortgage in consideration of a promise not to prosecute for a felony. When the papers were delivered and the promise given, there was nothing more to be done by either party, and the contract was fully executed. It was held in *Atwood v. Fisk, supra,* that the delivery of securities was the same in effect as the payment of money.

4. When rescission of illegal contract will not be permitted.

But conceding that there was a time when the appellee might have withdrawn from his illegal compact, removed the obstacle he had placed in the way of justice and recovered the securities, he never sought to do it, until the illegal purpose failed from other causes, and his agreement no longer thwarted justice. Both parties, following impulses of their own, willfully contracted to violate the law. The law will lend no aid to either of them but leave them where they have placed themselves.

The judgment will be reversed, and a judgment rendered here cancelling the mortgage of March 15, 1886, and enjoining any sale under it, but no relief will be given as against the second mortgage.