GRYTBAK *v.* GRYTBAK.

4-9094 227 S. W. 2d 633

Opinion delivered February 20, 1950.

Rehearing denied March 20, 1950.

*Geo. E. Pike,* for appellant.

*Milton G. Robinson,* for appellee.

MINOR W. MILLWEE, Justice. At the time of their marriage on May 10, 1936, in Arkansas County, appellant, Emma Grytbak, was a widow with one son 16 years of age and appellee, O. E. Grytbak, was a widower with

a daughter 11 years of age. In June, 1937, appellee purchased a home in Stuttgart, Arkansas, for which he paid $300 in cash and assumed certain debts against the property. The indebtedness was discharged by appellee in December, 1938, by the use of funds derived from cashing his soldier's bonus and the sale of a small tract of land he owned in another state. The deed was executed and delivered to appellee on the same date. The parties and the two children resided in the home at Stuttgart until May, 1939, when appellant left appellee, taking with her certain household goods which she owned at the time of the marriage.

On March 30, 1948, appellant sued appellee for divorce on the grounds of three years separation without cohabitation and general indignities on the part of appellee which allegedly forced her to leave home in 1939 and live apart from appellee. Appellant asked for temporary alimony, attorney's fees and a share of the home property at Stuttgart. Appellee answered denying the allegations of the complaint and pleading the statute of limitations as a bar to the charge of general indignities. He also filed a cross-complaint asking for a divorce on the grounds of desertion, three years separation without cohabitation, and general indignities.

After hearing the testimony, the chancellor entered a decree dismissing appellant's complaint, granting a divorce to appellee upon his cross-complaint on the ground of three years separation without cohabitation and ordering appellee to pay a fee of $100 to appellant's attorney. Both parties have appealed.

In the decree appealed from the chancellor found: ". . . that the failure of the marriage, and the separation of the parties, was brought on largely by the acts of the plaintiff; that she was principally at fault, and that defendant and cross-complainant was the injured party. . . ." This finding was made pursuant to the 7th sub-section of Ark. Stats. (1947), § 34-1202, which provides that in a suit for divorce on the ground of three years separation, the question of who is the injured party

may only be considered in the settlement of property rights and the question of alimony.

On the direct appeal appellant insists that the court's finding that appellee was the injured party is against the preponderance of the evidence and that she is, therefore, entitled to a division of the real and personal property acquired during the marriage under the provisions of Ark. Stats. (1947), § 34-1214.

It would serve no useful purpose to review the conflicting evidence upon which the court based its finding. There is no evidence of immoral conduct on the part of either party and counsel for appellant correctly states in his brief: ''There is testimony to the effect that there was some quarreling and bickering between the parties based upon jealousy for their respective children and the little ups and downs which go with all married life.'' But the preponderance of the evidence does not, in our opinion, support appellant's charges and present contention that appellee did not furnish adequate food for appellant and her son; that she was not allowed to buy her own clothing; that she was compelled to work too hard; that appellee discriminated against her son; and that he constantly nagged at appellant. Some differences arose between the parties because appellant entertained religious scruples against the manner in which appellee's daughter dressed and cut her hair, and some jealousy existed because appellee's daughter made better grades at school than appellant's son.

In an effort to determine the cause of separation the chancellor questioned appellant as follows: ''Just what did bring about the actual leaving, something usually happens. What happened, did you have a big quarrel? A. No, we just disagreed. He was always nagging and would sometimes puff up and be mad two or three days, and I would say 'Have I done something to wrong you?' I loved my home and I wanted to stay, but I was forced to leave.''

When the parties married appellee owned some household furniture, an old model automobile and the

tract of land which he sold to acquire the home place at Stuttgart. During the three years they lived together, appellee worked for daily wages as a drag line operator. They accumulated no additional property or savings during this period and there is no proof that appellee spent his earnings foolishly or for any purpose except to support the parties and their two children.

Sometime after the separation appellee acquired a drag line of his own and began work on a contract basis. He bought another drag line shortly before the institution of this suit. The two machines cost $10,000 but were used and require expensive repairs. Appellee testified that his net income for 1948 was less than $600 but he was somewhat evasive as to his actual earnings. While the parties lived together, appellee's earnings were supplemented by maintenance of a garden and truck patch on 6 of the 8 lots comprising the home place.

The case of *Ray* v. *Ray*, 192 Ark. 660, 93 S. W. 2d 665, is one in which a divorce was granted to the husband on his cross-complaint and this court upheld the chancellor's action in refusing to award the wife certain real and personal property acquired by the husband during the marriage. It was there said: "Since appellant has been determined at fault in the wrecking of the matrimonial venture, she is entitled to no part of appellee's property as a matter of law, 9 R. C. L., p. 497, § 319; § 3511, Crawford & Moses' Digest [Ark. Stats., 1947, § 34-1214], and her further assistance from appellee rests entirely within the discretion of the chancery court. *Pryor* v. *Pryor*, 88 Ark. 302, 114 S. W. 700, 129 Am. St. Rep. 102; *Clyburn* v. *Clyburn*, 175 Ark. 330, 299 S. W. 38." The court then modified and approved an award of alimony made by the chancellor. See, also, *Clarke* v. *Clarke*, 201 Ark. 10, 143 S. W. 2d 540.

In the Pryor and Clyburn cases, *supra*, it was held that a chancery court has the power to allow alimony to a wife against whom a decree of divorce is granted. In the instant case it was appellant's primary contention in the trial court that she was entitled to the divorce and was the injured party within the meaning of the

7th sub-section to § 34-1202, *supra*. She apparently did not press her claim for alimony and there is no specific finding in the decree as to alimony. While the chancellor found that appellant was principally at fault in the separation, the evidence does not warrant the conclusion that she was altogether to blame or that appellee was not partially responsible for the separation. It was shown that appellant contracted tuberculosis about three years after the separation and appellee took her to the sanatorium at Booneville, Arkansas, in his automobile and rendered other assistance in her illness, but has never tried to get her to come back to him.

Under all the circumstances, we think justice would be best served by modification of the decree to allow appellant alimony in the sum of $20 per month from the date of the decree. This allowance is, of course, subject to modification by the chancellor to meet changes in the situation and condition of the parties.

We find no merit in appellee's cross-appeal from the allowance of the fee to appellant's attorney. Except for the modification as to alimony the decree is affirmed on both the direct and cross-appeals.

## ON REHEARING

Appellee insists that, by modifying the decree to allow alimony to appellant, we have arbitrarily granted her relief on an issue that was not before the trial court. Cases are cited which state the familiar rule that issues not presented in the trial court cannot be raised for the first time on appeal. In her complaint appellant alleged that she was without funds to support herself and pay the costs of litigation and prayed for temporary relief out of funds belonging to appellee and for all other equitable relief. Appellee denied that she was entitled to anything. With the issues thus joined, much of the testimony was directed to appellee's financial condition and ability to pay. We have held that the statement of facts in a complaint or cross-complaint, and not the

prayer for relief, constitutes the cause of action, and that the court may grant whatever relief the facts pleaded and proved may warrant, in the absence of surprise to the complaining party. *Albersen* v. *Klanke,* 177 Ark. 288, 6 S. W. 2d 292. We conclude that the facts pleaded and proved warrant the allowance of alimony, and that appellee is not in position to plead surprise.