BRIDWELL *v.* BRIDWELL.

4-9197                                        231 S. W. 2d 117

Opinion delivered June 26, 1950.

*G. P. Houston, Sam Rorex* and *Gordon Armitage,* for appellant.

*Leon Reed, Golden Blount* and *A. F. House,* for appellee.

HOLT, J. The parties here were married October 17, 1948. May 26, 1949, appellee, J. H. Bridwell, sued for divorce alleging indignities. Appellant answered with a general denial and, in a cross complaint, asked for a divorce on the same ground (indignities) as alleged by her husband, and in addition asked for property settlement.

The trial court awarded appellee a divorce and allowed appellant a property settlement in the amount of $7,500. The cause comes to us on direct and cross appeal.

For reversal, appellant first questions the sufficiency of the evidence to support the decree of divorce to appellee.

At the time of the marriage, appellant had been twice married, and was 42 years of age. Appellee, also, had had two previous marriages and was 56 years old. A short time before the marriage here (June 23, 1948) the parties entered into a premarital contract whereby it was "mutually agreed by the parties hereto that when they enter into the Holy bonds of wedlock that the party of the second part shall have as her share and interest in full, including homestead and dower, in his estate should he predecease her, the sum of Ten Thousand ($10,000.) Dollars."

The evidence is voluminous and much of it is in conflict. We do not attempt to set it out in detail. Neither party was without blame. Almost from the beginning of the marriage there were frequent quarrels, discord and acts on the part of each that made their marriage venture almost certain to end in failure. The Chancellor found especially that appellant was given to cursing, and to the use of the most vile and obscene language toward appellee, such as to show extreme contempt for him. While, as indicated, the husband was not blameless, we are unable to say that the findings of the trial court on the divorce branch of the case is against the preponderance of the evidence. But appellant argues that all acts of indignities of the wife were condoned by appellee by continuing to cohabit with her after their occurrence. We

cannot sustain this contention on the facts before us. Here it appears undisputed that appellant left appellee on May 19th or 20th, went to her daughter's home in DeWitt and while there, without her husband's knowledge, employed an attorney to file suit for divorce. She returned home, unannounced, from this trip on May 25th, and immediately packed, and attempted to conceal, certain ·belongings, while her husband was engaged at his store. On coming to the house late in the afternoon and discovering his wife's return and her plans, a violent quarrel and encounter followed which resulted in their immeidate and final separation. The evidence does not show any cohabitation after May 20th and the outbreak of May 25th above, for which appellant appears to have been largely responsible, appears but a continuation of previous indignities, and condonation does not apply, in the circumstances.

The general rule is stated in 17 Am. Jur., p. 249, § 197. The text recites: ''Condonation is a conditional, rather than an absolute, remission of the offense, the implied condition being that the offense will not be repeated and that the guilty party shall not in the future commit any other matrimonial offense or, as if it is frequently expressed, that the offender will treat the injured party with conjugal kindness.''

Our own decisions are in accord with the general rule. In *Denison* v. *Denison,* 189 Ark. 239, 71 S. W. 2d 1055, we said: ''Upon the merits of the case, it may be said that the testimony is voluminous and conflicting, but, after carefully considering it, we are unable to say that the allegations of appellee's complaint are not supported by a preponderance of the testimony. No attempt was made to show that appellant was guilty of conduct involving moral turpitude. The testimony relates to the infirmity of her temper, which, according to appellee's testimony, was irascible and ungovernable.

''It is argued that the more violent outbreaks were condoned, because the parties continued to cohabit as man and wife after their occurrence. But not so. One indignity might not — and usually would not — afford

ground for divorce. It is the persistence of one spouse in a course of conduct which becomes intolerable to the other of which the law takes cognizance and grants relief by way of divorce, and the doctrine of condonation has no application under the facts of this case. *Longinotti* v. *Longinotti*, 169 Ark. 1001, 277 S. W. 41," and in *Franks* v. *Franks*, 211 Ark. 919, 204 S. W. 2d 90, we reaffirmed our holding in the Denison case and said:

"Assuming, without deciding that her acts in returning and resuming the marital relation, based on his promises not to repeat the offense, constituted condonation for past mistreatment, still it was only conditional condonation. If the condition is broken by future misconduct, condoned past conduct may then be relied on in support of an action for divorce on the subsequent misconduct or both. In *Longinotti* v. *Longinotti*, 169 Ark. 1001, 277 S. W. 41, we said: 'The law is well settled that either spouse may condone conduct of the other which, but for the condonation, would entitle the innocent spouse to a divorce. But it is equally as well settled that condonation does not deprive the aggrieved spouse of the right to a divorce on account of the subsequent misconduct of the offending spouse. On the contrary, subsequent misconduct will generally operate to revive the right to a divorce for the condoned offense.' See, also, *Denison* v. *Denison*, 189 Ark. 239, 71 S. W. 2d 1055."

We also hold that the decree of the trial court awarding appellant $7,500. should be affirmed.

The parties were able to live together for less than eight months. Appellant brought to the marriage venture no property, while appellee was possessed of very substantial means. Although appellant is held to be at fault and therefore not entitled to any part of appellee's property, as a matter of law, it was entirely within the discretion of the trial court whether any award should be made to her in the circumstances.

We said in *Ray* v. *Ray*, 192 Ark. 660, 93 S. W. 2d 665: "Since appellant has been determined at fault in the wrecking of the matrimonial venture, she is entitled to

no part of appellee's property as a matter of law, 9 R. C. L., p. 497, § 319; section 3511, Crawford & Moses' Digest, and her further assistance from appellee rests entirely within the discretion of the chancery court. *Pryor* v. *Pryor,* 88 Ark. 302, 114 S. W. 700, 129 Am. St. Rep. 102; *Clyburn* v. *Clyburn,* 175 Ark. 330, 299 S. W. 38.''

It appears that appellee, during the pendency of this litigation, has paid to appellant approximately $329.50 as fees for her attorneys, alimony of $100 per month from January, 1949, costs of printing her brief in the amount of $166, or approximately $1,095. He asked that he be credited with this amount and that it be deducted from the $7,500. awarded appellant. We think, in the circumstances, that appellee is not entitled to this deduction and his request, therefore, is denied.

Accordingly, the decree is affirmed on both direct and cross appeal, appellee to pay all costs in both courts and no additional attorneys' fee to appellant's attorneys is allowed.

GEORGE ROSE SMITH, J., not participating.